Thomas B. Quinn, Esq.
Gordon & Rees LLP
555 17th Street, Suite 3400
Denver, CO 80202
Phone: (303) 534-0941
Facsimile: (303) 534-5161
E-mail: tquinn@gordonrees.com

## UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF WYOMING

| | | |
|---|---|---|
| ARNOLD N. LARSON, INDIVIDUALLY AND AS A BENEFICIARY OF THE ARNOLD A. LARSON TRUST; and ARLA L. HARRIS, AS TRUSTEE OF THE ARNOLD A. LARSON TRUST, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil No.: 2:15-cv-00150-NDF |
| CHARLES R. LARSON and DEBRA M. LARSON, | ) ) | |
| Defendants. | | |

---

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' PETITION FOR PRELIMINARY INJUNCTION

---

Defendants Charles R. Larson and Debra M. Larson (collectively, the "Larson Defendants"), through their undersigned counsel, submit this Opposition to the Petition for Preliminary Injunction filed by Plaintiffs Arnold N. Larson and Arla L. Harris (the "Larson Plaintiffs").[1]  The Larson Defendants state the following in support thereof:

---

[1] The Larson Plaintiffs served the Larson Defendants by mail dated August 31, 2015.  Pursuant to Rule 6 of the Federal Rules of Civil Procedure and Local Rule 7.1, the Larson Defendants' response is due on or before September 17, 2015.

## INTRODUCTION AND BACKGROUND

This matter involves the ownership of real property located outside of Kemmerer, Wyoming, called the Larson Hereford Ranch (the "Ranch").  It focuses on certain disputed partnership interests of the Larson Hereford Ranch Limited Partnership (the "Partnership"), a Wyoming family limited partnership, which owns fifty percent of the Ranch.  Plaintiff Arnold ("Arny") N. Larson is the beneficiary to all Ranch interests now held by a trust – the Arnold A. Larson Restated Trust (the "AAL Trust") – created by his now-deceased father, Arnold A. Larson.[2]  The crux of this dispute concerns the amount of the AAL Trust's ownership interest in the Partnership.  The Larson Plaintiffs believe that it is 100 percent, and the Larson Defendants believe that it is only 32 percent.

The Ranch real property was acquired by Arnold A. Larson and Catherine N. Larson in 1954.  (Affidavit of Charles R. Larson ("Larson Aff."), attached hereto as **Exhibit A**, at ¶ 2.)  In 1983, they converted their ownership in the property from joint tenants to tenants-in-common to facilitate transfers to their respective revocable, living trusts, the Catherine N. Larson Trust (the "CNL Trust") and the AAL Trust.  (*Id.* at ¶3.)

In 1986, Catherine Larson passed away.  (*Id.* at ¶ 4.)  The Larson Defendants do not have access to her will at present, and it is unclear precisely what happened to her fifty percent interest in the Ranch upon her death.  (*Id.*)  It is possible that it was transferred into the CNL Trust, or it could have reverted back to direct ownership by Arnold A. Larson.  (*Id.*)  Because the understanding at the time seems to be the former, for the purposes of the Petition, the Larson

---

[2] Arny Larson also purports to directly own the fifty percent of the Ranch not owned by the Partnership. As indicated below, the Larson Defendants believe that this ownership is less than clear, but for the purposes of this Petition for Injunction (the "Petition"), they will assume that his claim is valid.

Defendants will assume that is the case, though they note that it is an issue that likely will need to be resolved at some point.  In any event, Arnold A. Larson was the trustee of the CNL Trust. (*Id.*)

On December 27, 1988, two years after his wife's death, Arnold A. Larson and two of his sons, Charles R. Larson and David J. Larson, created the Partnership for the primary purpose of holding legal ownership in the Ranch.  (*Id.* at ¶ 5.)  All three were general partners.  Charles R. Larson and David J. Larson each owned two percent general partnership interests in the Partnership; Arnold A. Larson owned the remaining 96 percent (48 percent as general partner, and 48 percent as limited partner).  (*Id.*)  Three days later on December 30, 1988, Arnold A. Larson transferred by deed his undivided one-half interest in the Ranch to "*ARNOLD A. LARSON, CHARLES R. LARSON and DAVID J. LARSON and the survivors and survivor thereof, General Partners of LARSON HEREFORD RANCH, LIMITED PARTNERSHIP, with full power and authority to assign, sell, transfer, convey, encumber and mortgage, Grantees*." (*Id.* at ¶ 6.)  The deed recording that transfer is attached hereto as **Exhibit B**.

Based on the foregoing deed language, it is unclear at present whether the language effected a transfer of Arnold A. Larson's one-half interest in the Ranch real property to the Partnership, or whether it effected a transfer to the individually-named general partners in their personal capacities.  For the purposes of the Petition, the Larson Defendants will assume the latter was the case, but they note that this issue also is one that will require resolution at some point through these judicial proceedings.  (Larson Aff., at ¶ 6.)

In any event, from 1988 to 1995, Arnold A. Larson undertook a systematic plan to

transfer ownership of bigger shares of the Partnership to Charles R. Larson and David J. Larson and their families.  (*Id.* at ¶7.)  The impetus for this plan was to allocate the Ranch and another ranch owned by Arnold A. Larson between his sons so that Charles R. Larson and David J. Larson would own one ranch (the Ranch) upon his death, and Arny Larson would own the other. (*Id.*)  In order to effect this plan, on an annual basis over an approximately eight year period, he gifted two percent shares of the Partnership to each of Charles R. Larson, David J. Larson, and their respective wives, resulting in a total of 64 percent of the Partnership interests being transferred.  (*Id.* at ¶ 9.)  Tax documents reflecting those transfers are attached hereto as **Exhibit C**.  As a result, after all of the gifts had been consummated by 1995, Charles R. Larson and David J. Larson each owned eighteen percent of the Partnership (the original two percent, plus sixteen percent in gifts), and their wives each owned sixteen percent.  (Larson Aff., at ¶ 9.) Arnold A. Larson owned the remaining 32 percent.  (*Id.*)

With respect to the Ranch real property, then, as of 1995, it seems clear that Arnold A. Larson owned sixteen percent of the Ranch real property through his interest in the Partnership, Charles R. Larson and his wife owned seventeen percent in the aggregate through their Partnership interests, and David J. Larson and his wife owned the same (also through the Partnership).  (*Id.* at ¶ 10.)  As noted above, it is unclear whether the CNL Trust owned the other fifty percent formerly owned by Catherine N. Larson, or whether Arnold A. Larson owned that interest directly.  (*Id.* at ¶10.)

In 2012, Arnold A. Larson passed away.  (*Id.* at ¶ 11.)  At that point, pursuant to the terms of his last will and testament (the "Will"), he purported to exercise the special power of

appointment granted to him as trustee by the CNL Trust to deed the fifty percent ownership of the Ranch real property formerly owned by Catherine N. Larson to Arny Larson.  (*Id.*)  As alluded to above, the Larson Defendants also have some question as to whether the Ranch ownership interest was actually in the CNL Trust in the first place, but for the purposes of this Petition, they will assume that it was.  Also pursuant to the terms of the Will, all of Arnold A. Larson's direct and indirect interests in the Ranch real estate, including all of his interest in the Partnership, were transferred to the AAL Trust, with Arny Larson as the purported sole beneficiary of those interests.  (*Id.*)  Charles R. Larson and Arla Harris (née Larson) have been the only two co-trustees for the AAL Trust since their father's death.  (*Id.*)

Arny Larson has demanded that the AAL Trust be settled, and that all assets therein be distributed to the designated beneficiaries.  (*Id.* at ¶12.)  Crucially, he is disputing that the transfers of Partnership interests to Charles R. Larson and David J. Larson and their wives over the eight year period from 1988 to 1995 ever occurred.  (*Id.*)  Arny Larson therefore contends that the AAL Trust owns 100 percent of the interests in the Partnership, which he says was part of Arnold A. Larson's estate upon his death.  (*Id.*)  This presents an obvious problem in the distribution of the AAL Trust assets.  (*Id.* at ¶ 13.)

Until the ownership of the disputed 68 percent interests in the Partnership – as well as the other issues in question – can be resolved, it will be impossible to determine whether Arny Larson owns all of the Ranch, or whether he only owns 66 percent (or even some lesser amount) of it.  (*Id.*)  As one of the two co-trustees of the AAL Trust, Charles R. Larson, pursuant to its express terms, engaged legal counsel to provide advice and help settle the matter.  (*Id.* at ¶ 14.)

Relatedly, as a general partner in the Partnership, he also engaged counsel to help determine the disputed ownership interests issue as to that vehicle as well.  (*Id.*)

The Larson Plaintiffs have come before this Court with their Petition, asking it to enter a preliminary injunction blocking the trustee from using any trust assets to resolve the foregoing issues.  They do not mention the Partnership, but presumably they would lodge an identical request with respect to that entity.  These requests are directly contrary to the express terms of the enabling agreements establishing both the Partnership and the AAL Trust, which contemplate that if there are unresolved trust or partnership disputes, the trustees and general partners can use AAL Trust or Partnership assets to engage legal counsel settle those disputes.

But the Petition is fatally defective for a number of reasons.  First and foremost, the Larson Plaintiffs fail to show that they will be irreparably injured in the absence of a preliminary injunction.  The harm that they seek to avoid – the allegedly improper use of trust and/or partnership funds to pay for legal advice concerning that AAL Trust and/or Partnership – is almost the quintessential example of an injury that could be remedied through monetary or compensatory damages.  Money damages can always remedy money losses.  Second, they have not demonstrated a substantial likelihood of success on the merits.  The AAL Trust and Partnership agreements in question expressly contemplate that trustees and general partners might use AAL Trust and Partnership funds to engage counsel to provide legal advice.  Charles R. Larson as trustee and general partner therefore is not doing anything unauthorized by exercising that express authority.  Third, and finally, the balance of harms favors the Larson Defendants.  Entering a preliminary injunction potentially could prevent them from putting on a

legal defense in this matter.  In contrast, if the Larson Plaintiffs ultimately are correct that AAL Trust or Partnership funds should not have been used to pay for attorneys, then again, this Court can simply use its equitable power to order the restoration of those funds.

Therefore, for all of the foregoing reasons and those discussed below, the Larson Plaintiffs' Petition for a Preliminary Injunction should be **DENIED**.

## ARGUMENT

### I.    *Legal Standard.*

"Preliminary injunctions are extraordinary equitable remedies designed to 'preserve the relative positions of the parties until a trial on the merits can be held.'"  *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. Kan. 2009) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).  A federal district court issuing a preliminary injunction must do so in compliance with Rule 65 of the Federal Rules of Civil Procedure.  *Id.*

Courts generally apply a four factor test to evaluate whether a preliminary injunction should issue.  The party seeking the injunction must demonstrate that four equitable factors weigh in favor of it:

> (1) [He or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury… outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits.

*Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).  Furthermore, a party seeking a preliminary injunction must clear a high hurdle.  "It is well settled that a preliminary injunction is an extraordinary remedy, and that *it should not be issued unless the movant's right to relief is clear and unequivocal*."  *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001) (quoting

*SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)) (emphasis added);

*accord Diné Citizens Against Ruining Our Env't v. Jewell*, 2015 U.S. Dist. LEXIS 109986, at

*56-57 (D.N.M. Aug. 14, 2015).

## II.   *The Larson Plaintiffs Have Not Shown an Irreparable Injury in the Absence of the Issuance of a Preliminary Injunction.*

The Larson Plaintiffs' Petition first must be rejected because they do not meet the first

requirement for the issuance of a preliminary injunction – *i.e.*, that they will suffer irreparable

injury if an injunction does not issue.  That failure is highly significant.  The "showing of

probable irreparable harm is the single most important prerequisite for the issuance of a

preliminary injunction."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d

1256, 1260 (10th Cir. 2004).  Thus, unless the Larson Plaintiffs can show irreparable injury, their

Petition will be a nonstarter.

Courts generally define "irreparable harm" as harm that cannot be undone through an

award of compensatory or money damages.  *See Salt Lake Tribune Publ. Co. v. AT&T Corp.*,

320 F.3d 1081, 1105 (10th Cir. 2003); *Tri-State Generation & Transmission Ass'n v. Shoshone

River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986).  Although there does not need to be an

absolute certainty that the irreparable harm will occur absent the issuance of an injunction in

order to meet this requirement, the risk of such harm must be more than speculative or

hypothetical.  *See Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1258 (10th Cir.

2003).

Here, the Larson Plaintiffs have not come close to meeting their burden to clearly and

unequivocally establish that they will be irreparably injured absent a preliminary injunction

precluding the use of AAL Trust or Partnership funds to engage counsel.  First, the Larson

Plaintiffs have not shown there is more than a theoretical possibility that any additional moneys

will be needed in the future for that purpose.  They are just guessing that this could occur.  (Pet.,

at ¶ 6 (characterizing possibility as "real danger").)  That is too speculative to constitute an

irreparable injury.  *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) ("To

constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'").

But even if the Larson Plaintiffs did show that they faced an actual – and not hypothetical

– harm in the absence of a preliminary injunction, they still would not satisfy the first and most

important requirement.  The harm they envision is that Charles R. Larson, a trustee and general

partner, might continue to use AAL Trust and Partnership funds to pay for legal counsel in

connection with disputed issues involving the AAL Trust and Partnership.  In other words, ***they

are concerned that AAL Trust  might be deprived money that would otherwise go to the

beneficiaries***.  Yet that type of monetary loss is precisely the sort of injury that will be able to be

addressed by a compensatory damages award.  As stated above, money damages can always

remedy a financial loss.  In the unlikely event that this Court ultimately agrees with the Larson

Plaintiffs that AAL Trust or Partnership funds should not have been used to pay for counsel, it

has an easy remedy right at hand – it can order those funds to be repaid.  Why would there be

any need for a preliminary injunction now?

Put simply, the Larson Plaintiffs have not made ***any*** showing – much less a clear and

unequivocal one, as they are required to do – that it would be impossible for this Court to make

them whole if they are correct and there are additional allegedly illicit withdrawals of AAL Trust

or Partnership funds.  Absent such a showing, they have not met the first and most important irreparable injury requirement that must be satisfied before a preliminary injunction can issue. Therefore, their Petition should be denied for this reason alone.

### III.   The Larson Plaintiffs Have Not Shown a Substantial Likelihood of Success on the Merits.

As noted above, the second requirement that must be met before a preliminary injunction can issue is that the party seeking the injunction must demonstrate a substantial likelihood of success on the merits.  *See Schrier*, 427 F.3d at 1262.  This often is the hardest to conceptualize; on the one hand, courts are reluctant to apply the same heavy burden of actually showing success on the merits that applies with respect to a permanent injunction, but on the other hand, they want to hold parties seeking preliminary injunctions to some higher burden than merely presenting a *prima facie* case.  *See Diné Citizens Against Ruining Our Env't*, 2015 U.S. Dist. LEXIS 109986, at *61 n. 10 (discussing various considerations in the "substantial likelihood" analysis).  In the Tenth Circuit, the party seeking an injunction generally must make "a *prima facie* case showing a reasonable probability that he will ultimately be entitled to the relief sought." *Automated Mktg. Sys., Inc. v. Martin*, 467 F.2d 1181, 1183 (10th Cir. 1972); *Crowther v. Seaborg*, 415 F.2d 437, 439 (10th Cir. 1969); *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 781 (10th Cir. 1964).

Here, the Larson Plaintiffs have not shown ***any*** probability that they will prevail on the claims central to their Petition, much less a reasonable one.  Again, the crux of the Larson Plaintiffs' request is that they apparently believe that Charles R. Larson, as trustee and general partner, is inappropriately using funds held by the AAL Trust and the Partnership to engage

counsel to provide representation in connection with those entities.  But the Larson Plaintiffs do not point to any evidence to show that Charles R. Larson was not authorized as trustee or general partner to hire attorneys to help settle disputed issues involving those vehicles.

And, in fact, the operative agreements governing these entities appear to significantly undercut their position.  The Restated Trust Agreement for the AAL Trust, which is attached hereto as **Exhibit D**, expressly provides that a trustee has the following power:  "To employ and compensate attorneys, accountants, managers, agents, assistants, and advisors without liability for any act of those persons, so long as they are selected and retained with reasonable care.  ***Fees may be paid from the domiciliary trust estate even if the services were rendered in connection with ancillary administration***."  (Rest. Trust Agmt., Exhibit A, at Art. IX, sec. (d) (emphasis added).)  Notably, this power is vested in "Trustee," and it does not require majority or unanimous approval by all trustees in order to be exercised.

Similarly, the agreement governing the Partnership, which is attached hereto as **Exhibit E**, has a provision specifically addressing the ability of general partners to engage counsel.  Article XVIII (Section 18.1) provides in relevant part:

> The General Partners are further authorized and empowered to perform any and all acts and functions as they reasonably deem necessary in the furtherance of the business of the partnership, including but not limited to the following:
> …
> (f) To employ agents, ***counsel***, independent contractors, or any other person or entity deemed appropriate to the conduct of the partnership business.

(P'ship Agmt., Art. XVIII, sec. 18.1(f) (emphasis added).)  Because there is no dispute that Charles R. Larson is a general partner in the Partnership, this provision expressly authorizes him to engage counsel in connection with Partnership business.

The foregoing provisions in the Restated Trust Agreement and the Partnership agreement should put an end to any suggestion that Charles R. Larson, as trustee and general partner, lacked or lacks the authority to hire attorneys to help resolve any disputes involving those entities. As such, the Larson Plaintiffs have failed to meet their burden of showing a substantial likelihood of success on the merits, and their Petition should be denied.

## IV.   *The Balance of Harms Favors the Larson Defendants.*

The last reason why the Petition should be denied is that it also fails the requirement that the threatened injury to the Larson Plaintiffs, which they are attempting to address with injunctive relief, must outweigh the damage that would be suffered by the Larson Defendants if such an injunction issues. Once a court determines that the party requesting injunctive relief will suffer some injury absent the issuance of a preliminary injunction, it must then balance that injury against the harm suffered by the non-moving party as a result of the injunction. *See, e.g., Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002).

As noted above, the Larson Defendants do not believe that the injury cited by the Larson Plaintiffs – the speculative possibility that funds held by the AAL Trust and the Partnership might be wrongfully diverted to pay for legal counsel – is an irreparable one, because this Court can always order those funds to be repaid or otherwise award monetary damages to the extent that the Larson Plaintiffs prevail on the issue. But even if it is, it will pale in comparison to the potential harm suffered by the Larson Defendants if Charles R. Larson is enjoined from exercising his duty as a trustee and general partner to engage counsel to secure legal advice and representation. In the absence of such advice and representation, it is possible that the ongoing

disputes involving the AAL Trust and Partnership will remain unresolved, or will be resolved in a manner that is inequitable or unfair.  This is especially true insofar as the Larson Plaintiffs are each represented by counsel.  Issuing a preliminary injunction would entail a significant risk that the Larson Plaintiffs would be creating a situation in which they are precluding the Larson Defendants from taking advantage of the same advice and representation of counsel that they enjoy themselves.  That potential unfairness must outweigh the general inconvenience in having to wait until later down the line for this Court to determine whether any amounts need to be repaid to the AAL Trust and Partnership accounts in connection with the engagement of counsel.

## CONCLUSION

WHEREFORE, the Larson Defendants respectfully reiterate their request that the Larson Plaintiffs' Petition for Preliminary Injunction be **DENIED**.

Respectfully submitted this 17th day of September, 2015.

**GORDON & REES, LLP**

/s/ Thomas B. Quinn_____
Thomas B. Quinn, Esq.
Gordon & Rees LLP
555 17th Street, Suite 3400
Denver, CO 80202
Phone: (303) 534-0941
Facsimile: (303) 534-5161
e-mail: tquinn@gordonrees.com

ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of September, 2015, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Judith Studer
Schwartz, Bon, Walker & Studer, LLC
141 South Center Street, Ste. 500
Casper, WY 82601
(307) 235-6681
Attorney for Plaintiff Arnold N. Larson

Marty L. Oblasser
Corthell and King, P.C.
221 South 2nd Street, P.O. Box 1147
Laramie, WY 82073
(307) 742-3717
Attorneys for Arla Harris, Trustee

*/s/ Karla M. Freeman*
For Gordon & Rees, LLP

1108486/25065546v.1